First case this afternoon, and indeed the last case this afternoon, is People of Illinois v. Shelby R., case number 411-0191, for the appellant, Jacqueline Bullard, for the appellee, Anastasia Brooks. Please proceed. May it please the Court. My name is Jackie Bullard with the Office of the State Appellate Defender, and I represent the minor responsibility in this case, Shelby R. May it please the Court. The trial court in this case violated the terms of the Juvenile Court Act by committing Shelby to the Department of Juvenile Justice for a status offense. Status offenses are unique categories of cases that are governed by the terms of the Juvenile Court Act. Status offenses are behaviors that are illegal only because of an inherent characteristic in the accused. In delinquency court, that inherent characteristic is almost always age, and so therefore offenses like truancy, smoking, or underage consumption of alcohol, as occurred in this case, are only illegal because of the age of the minor. The legislature has determined that these status offenses are categorically different than other offenses that minors commit when they appear in delinquency court, and so therefore it has created a almost categorical absolute ban on the incarceration of status offenders, either in detention centers or the Department of Juvenile Justice, under all but a very limited number of circumstances. If the minor does violate, by committing a status offense, does violate a valid court order, there is an exception that allows the trial court to incarcerate that child, but only in detention centers. There is an absolute ban in committing status offenders to the most serious sentence that we have available under the terms of the Juvenile Court Act, commitment to the Department of Juvenile Justice youth prisons. That's exactly what occurred in this case. Let me stop you there. Are you saying it would be lawful under the Act to commit a juvenile to detention for 30 days, up to 30 days for this offense? Depending on the particular circumstances of the case, if she were placed on probation for this underage drinking, the court could not sentence her to detention at that initial probation sentencing, because at that point, that underage drinking, she hasn't violated any order of the court. And usually, typically, when there's a violation of an order of the court, there are contempt proceedings. So, no, if a minor is initially adjudicated delinquent for underage drinking, detention time would not be available because there's no violation of a valid court order. This case involves the violation of probation, and the violation of a probation order does constitute the violation of a valid court order. So then you're saying, if her probation was revoked, she could be sentenced to 30 days in detention, but she couldn't be sent to DOJJ? She absolutely cannot be sentenced to DOJJ, because there are three statutory provisions that govern status offenders, and only two of those contain an exception for a valid court order. There is the general prohibition on committing kids to any secure confinement. That's contained in Article I. If there's a status offense, you can't commit a child to any type of secure holding. But that general ban does contain an exception for a violation of a valid court order. So if the minor violates a valid court order, even though it's a status offense, the minor could be held. The same is true of Section 401 in the Juvenile Court Act, which governs when a law enforcement officer can take a child into custody. There is an exception in that case that if the minor has been accused of violating a valid court order, the minor can be taken into secure custody. The list of sentencing options that are available to trial courts, however, of the provisions that govern when a child can be sent to the Department of Juvenile Justice, does not contain a valid court order exception. That section of the Juvenile Court Act says a minor may only be sent to the Department of Juvenile Justice if the minor is at least 13 years old and has not committed a status offense. That particular subdivision of the statute says that children who commit status offenses cannot be sent to the Department of Juvenile Justice. And it does not contain a valid court order exception. And is that 401? That is subsection 5-7101B. And that is section 710 of the Juvenile Court Act is what sets out all of the authorized dispositions that a trial court can impose once a child has been adjudicated delinquent. And then subsection 1B governs when a child can be sent to DOJJ. And those restrictions are the most confining on trial courts' sentencing authority. So even though, under your theory of the case, a juvenile would not be subject to detention for unlawful consumption of alcohol as an initial disposition, if they violate their probation, you think that is a lawful disposition? Under some circumstances. Because... Well, what about this circumstance? Well, in this case, it's not authorized because he sent her to the Department of Juvenile Justice. No, no, I mean... Could he have sent her to detention? He says, you violated your probation. I'm going to revoke your probation, sentence you to seven days' detention, and at the end of that seven days' detention we'll come back and we'll have a sentencing hearing. Or I'm going to reimpose probation that is a condition of probation because you've already violated it, and I'm going to give you seven days or ten days or thirty days. That's the question that's being asked. I think I'm hesitant to concede that that would be appropriate because that's not the issue that's before the court. So we haven't really briefed that issue vigorously. I can imagine a case where if I had a child who was committed to detention, I would be arguing that... You can't do that either. Right. Well, because when you revoke probation, you're resentencing for the initial offense. Correct. And if you couldn't put them in jail on the initial offense, I don't see how you could on a probation revocation. I agree with you in terms of imposing the sentence as part of a probation revocation sentence, but I do believe that I have to concede that the valid court order exception allows a court to find a child in contempt for violating a term of probation. So I do think that under those circumstances, the trial court could find the child in contempt. Rather than proceeding by way of a petition to revoke. Yes. And the trial court could find the minor in contempt at the same time that the petition to revoke probation is proceeding. So I do think that the Juvenile Court Act does allow for contempt commitments for status offenders. But only up to 30 days detention. You couldn't do it to the DOJJ. Never to the Department of Juvenile Justice. And I think that the reason that the legislature in this statutory scheme, where it didn't include a valid court order exception for DOJJ commitments, makes some sense. There is a qualitative difference between putting a child in a detention center and putting a child in the Department of Juvenile Justice. Detention centers tend to be close to home, so minors can be visited by their family members. Whereas commitments to the Department of Juvenile Justice, you're moving a child far away from home. There is a greater stigma attached to a Department of Juvenile Justice commitment than there is to a detention center commitment. There are 30 day limits to detention commitments where there are not time limitations other than the maximum sentence allowed for an adult who's committed a comparable offense. And I think also the degree of commitment. Trial courts are not free to commit any child, a child who commits any offense in delinquency court, to the Department of Juvenile Justice because the trial court thinks it's a good idea. The trial court is constrained by some very limiting language. That a child can only be sent to the Department of Juvenile Justice if he's a danger to himself and others, that he can't be controlled by his parents. This is really almost essentially a disposition of last resort. So Department of Juvenile Justice commitments are qualitatively different than detention. So I think that's perfectly reasonable that the legislature decided not to include an exception for DJJ commitments. I think also that when a trial court commits a child to the Department of Juvenile Justice, it doesn't cost the county a dime. When a child goes to the Department of Juvenile Justice, the state picks up the tab for that child's commitment. Whereas if a child is committed to a detention center, the cost of that commitment has to be borne by the county. And I think it's reasonable for the legislature to say, we want trial courts to think about costs that are associated with this. If you really think it's important to incarcerate that kid, we'll give that to you. We'll allow you to find that child in contempt, but we're going to make your county, your locality, pick up the tab for that commitment order. In this particular case, as I said, there's no valid court order exception for a DOJJ commitment. So in the very narrow particular issue that is before this court, the trial court, the question of whether under some particular set of circumstances the child could be sentenced to a detention. Can you give me the statutory site for what you're saying provides that there's no valid court order exception on this? Yes, that is in the Juvenile Court Act, 705 ILCS 405, backslash 5-710, subsection 1B. And actually, it's not a very long... It's not a very long term at all that I can actually read for you. A minor found to be guilty may be committed to the Department of Juvenile Justice if the minor is 13 years of age or over, provided that the commitment to the Department of Juvenile Justice shall be made only if a term of incarceration is permitted by law for adults found guilty of the offense for which the minor was adjudicated delinquent. Very long way of saying a status offense. If an 18-year-old is convicted of unlawful consumption of alcohol, is the 18-year-old a status offender? I think that he can be considered a status offender, but he's not encompassed within the provisions of the Juvenile Court Act. What the Juvenile Court Act says is we treat children who commit misdemeanors under 18. The cutoff is 16 for felonies, but if a child commits a misdemeanor and he is under the age of 17, we're going to treat that 17-year-old differently than we treat 18 or 19 or 20. An 18-year-old could get, in theory, at least 364 days in the county jail. Yeah, absolutely. And it is only because the legislature has said we treat children differently and we've drawn the line for children at the age of 18. Isn't the legislature essentially saying that 18, 19, and 20-year-olds are going to be treated as adults, whether or not they precisely meet the definition? Yeah, absolutely. Well, doesn't that undermine your argument then? Because 18, 19, and 20-year-old adults can be sentenced to 364 days.  I think that the response to that is threefold. First is the Juvenile Court Act, which is where Shelby was. It sounds like you anticipated that question. The Juvenile Court Act that Shelby was adjudicated delinquent under defines a minor as anyone under the age of 21. So if a minor is under the age of 21, then an adult, for purposes of the provisions of the Juvenile Court Act, an adult is 21 and older. So when you look at the definition of a minor, it necessarily says that when we're operating under the terms of the Juvenile Court Act, an adult is 21 and older. And so therefore those 18, 19, and 20-year-olds don't fit the definition of adult under the Juvenile Court Act. My second response is that's not an offense that all adults can be found guilty of in prison. It's a very, very narrow classification of adults, if you were. They're adults in criminal court. They're not adults in juvenile court. It depends on which courtroom door you walk through, whether that 18, 19, and 20-year-old is an adult or a minor. And then finally, I think that it makes perfect sense that the legislature chose to draw the line there. The legislature has drawn the line at kids under the age of 18 who commit misdemeanors and say, we're going to treat these kids differently. They're developmentally different. We know that rehabilitative programs work differently with them. And so we're going to say, with status offenders, which is underage drinking, which is essentially a normative offense. Normative behavior. Over half of all teenagers engage in that behavior. When I say normative, I don't mean appropriate. I don't mean it's behavior that we like for kids to engage in. But it is a behavior that is often engaged in by the majority of teenagers. And so what we're going to do is we're not going to throw these kids in facilities where there are steel beds and concrete walls and razor wires around the facilities. We're going to treat them differently. And again, it really is because there is this substantial difference between these Department of Juvenile Justice facilities, which are prisons, and detention centers, which oftentimes are not much better. The 17-year-old can't get the 364 because an adult can't. But an 18-year-old can, and yet an adult can't. Does that seem logical to you? I think you can make an argument that the legislature was behaving... Because the legislature has such broad discretion to define offenses and what offenses they find worthy of punishment, what offenses people should be treated like adults. And I think you can make a reasonable statement that it was reasonable for the legislature to say, listen, once you hit the age of 18, you know better. You ought to know better than to drink. Your prefrontal cortex is more developed. Maybe you should know better, but nonetheless an adult can't commit that offense. How about, let me think, criminal sexual abuse. There's at least one section under criminal sexual abuse that can only be committed by someone, I think, under 17 years of age. So an adult can't commit that section, even though they might be able to commit a different section of criminal sexual abuse. Same thing? No incarceration because an adult can't commit that same section? No, absolutely not, because both children and adults can commit the actus reus. They can commit the crime. The subsections in the statute only distinguish between punishment that applies to minors under the age of 17. So, for example, if there's sexual contact between a 16-year-old and a 15-year-old, because there's less than a five-year gap between those two kids, that's a misdemeanor is what that is. The offense itself isn't illegal because the kid is only 17. Only the degree of punishment that applies is affected by the age of the minor. Whereas if a 25-year-old adult committed that same offense against a 15-year-old, that would be a felony. They're both guilty of a crime. But also a 21-year-old could commit sexual contact with a 16-and-a-half-year-old, and that's only a class A misdemeanor. And again, I think that goes back to the definition of a status offense, which is the age alone of the accused is what triggers the breaking of the law. And so it's illegal for anyone to engage in that sort of sexual behavior. Everyone's prohibited from doing it. It's not the age of the accused that triggers criminal liability. It's only the age of the accused that actually mitigates the harshness of the sentencing method issue. I don't think that a freestanding crime would ever be characterized as a status offense, because it's not illegal simply because of the age. The age of the accused is not what turns it into a criminal offense. Whereas with underage drinking, it's the age of the accused that turns that into a criminal offense. Don't you think it's surprising there are no prior cases on this issue? I don't think it's surprising at all. I think that most counties are reading the Juvenile Court Act correctly, and I think that they're doing that especially because there are some pretty draconian financial consequences that come to the state when we incarcerate over a certain percentage of children, when we incarcerate over a certain percentage of status offenders, we're at risk of losing federal funding. And so I think that most counties are not incarcerating status offenders, and so the Champaign County numbers are keeping the numbers low. I think that also the Champaign County case, probably the fact that it's a status offense, is probably masked by the fact in terms of data collection. Is this the first time you've had a case out of Champaign County where they incarcerated a juvenile on an illegal consumption charge? It's hard to believe. It is outside the record. I have been made aware of Champaign County trying to send kids to other minors. I said I didn't want to go too far. This is the first appeal from this practice of trying to send children to the Department of Juvenile Justice. And the state argued that this is moot. I think that this clearly satisfies all three criteria for mootness. I do think this court can reach an issue of first impression, and this particular case highlights why it can reach an issue of first impression. When you have a rogue county that's engaging in behavior that's unauthorized by statute, you're never going to have conflicting case law because everybody else is doing it correctly. I see that my time has expired. May I please support the counsel? My name is Anastasia Brooks and I represent the people in this case. I don't like to waste time arguing about moot questions without clearly ascertaining that an exception to mootness narrowly construed has clearly been satisfied. I'd like to start with the threshold question of whether there is in fact a mootness exception that has been clearly established as narrowly construed. And the defendant's respondent attorney claims that all three apply, except there's really no clear showing of collateral consequences. There's a vague reference to applying for military service. But the cases like Alfred H.H. show that there has to be some actual legal benefit to be derived. Because they can't change history. The child was in fact sentenced to, did serve time in D.J.J. The question is what effect, what legal benefit can be gained if this court were to reverse that or vacate that and not essentially rewriting history, but like as Alfred H.H. mentions, the basis for a motion to eliminate for example. As a trial court judge I can tell you, I have a juvenile in front of me who had been previously sent to the D.O.J.J. The next time you have that juvenile in front of you, you look at that issue. But see the general rule is that sentences once served are not, there's no case cited by the defendant showing that a served sentence would have any sort of benefits if vacated for the purposes of the collateral consequences exception. Their argument is that somehow juvenile prison is different. And it doesn't seem to be any different because the fact is that there wasn't adjudication of delinquency,  and those are the factors that are going to be relied upon by a subsequent judge. And if the fact that they in fact did serve time in prison and were not thereby rehabilitated from that, the legality of their prison service time is not going to be the determining factor. The judge can look at it, well you've been to prison before and you haven't corrected your behavior. This court cannot change history. If the minor spent time in prison and doesn't rehabilitate that, and that's considered in the future by a judge, this court cannot change history. That could be validly considered because if that affects the minor's rehabilitative potential. Essentially what they're claiming is that the legality of the term of imprisonment matters. But there's no clear showing made to that effect because this court would essentially have to be making new law, creating a law in opposition to the general rule, which is that a sentence once served does not matter. The legality of that sentence is moved and there's no collateral consequences exception, for example, that is recognized for challenging the validity of the conviction once a sentence is served. In that case, collateral consequences are presumed. They don't have to be proved. Here, the defendant has to really prove the collateral consequences and there's been no real attempt to do so. There's just been some vague references to military service, for example. With respect to the capable repetition, again, no clear showing that this minor, not just any minor, but this particular minor is going to be sentenced again to juvenile justice or detention for a status defense. Of course, given what the minor's age could be by now, that becomes less and less likely as the minor reaches 17 or 18 years old. So there's no clear showing of that problem as well. The main issue I'd like to talk about is the second one, the public interest exception. And the reason why is because there have been some previous appellate rulings that have not complied with the trends in the Supreme Court's jurisprudence with respect to this. And I refer specifically to the recent decisions of Robert F. out of this court, Charles K. out of this court, and the Horstman case from the Second District. In Robert F., they cited the fact that the statute was a relatively new piece of legislation being interpreted and that there was only one published opinion. Therefore, that justified an authoritative determination regarding the interpretation of that statute. And again, there was no conflicting case law precedent, no disarray in the law that was being corrected. It was simply to make law in a case that did not matter, which is what the Supreme Court tells us is not the proper goal of this court. In Horstman, they said it was a case of first impression, and there does not appear to be any authoritative determination, citing Charles K. And Charles K. says there does not appear to be any authoritative determination specifically requiring a jury instruction in the manner urged by the respondent in that appeal. Again, the controlling case is the Henry Commitment of Fernandez from 2010. The Supreme Court of Illinois gets to decide, and this court has to abide by what the policy that the Supreme Court adopts in terms of how to handle mootness issues in the context of issues of first impression. And it's quite clear in their paragraph that they said that the appellate court resolved an issue of first impression, but it said no conflict or disarray in law exists. Therefore, because no precedent exists, the state is seeking a purely advisory opinion on the question that has yet to be decided. Well, isn't that circular reasoning? How do you ever get a decision if you don't decide it? Because, like, in cases, for example, like the Christopher K. case, in that case, the minor did not yet turn 21 when the appellate opinion was issued. In Fernandez, the appellate opinion was moot. It was already moot when a court issued its opinion. A different case was in the Christopher K. case. In the appellate case, the minor had not yet turned 21. The turning of 21 is what made that case moot by the time it reached the Supreme Court of Illinois's decision. When they issued that decision, the minor had already turned 21 when the case became moot. So there are situations where cases will not be moot when decided, and there will be precedent. But the Supreme Court does not say that if it's impossible for there to be precedent, that becomes an extra exception to the exception. Because what they say is, in the J.D. case, it says their adherence to the established rule that mootness exceptions should be narrowly construed, because they don't want a string of advisory opinions. And what happens when the appellate court, in cases like Robert F. Horsman and Charles K., start interpreting statutes that have never been interpreted before in moot cases, for example, there's the potential for a proliferation of advisory opinions. And what the Supreme Court of Illinois is trying to tell us is, really, that the public interest exception is really, it's for them. They are the ones who decide and resolve, authoritatively, cases in which there's a conflict of appellate precedent. That is going to be the most common application of that rule. And they do not want the appellate court deciding questions that have never been decided before, just for the sake of setting a precedent for future cases. What public interest exception means is an authoritative resolution.  And here, and then also like the In Re Adoption of Walgreens case, they say circuit court decisions are not precedent. Therefore, there has to be conflicting precedent. Precedent meaning an appellate decision, a published appellate decision that has to be resolved. Not a circuit court decision. The circuit court decision here does not set any precedent that needs to be corrected or resolved. So therefore, for that reason, the defense likes to refer to the special concurrence of Justice Freeman. And Justice Freeman is kind of interesting, because although it's not controlling, it points out that there is now an equation, essentially, between this public interest prong of this public interest exception and the existence of conflict in authority. Essentially, that's what it says. A surrogate for the actual third factor of the public interest exception test. That's true. That's what's happened. The Supreme Court of Illinois has made that their policy. And Justice Freeman might disagree with that, but the majority of the court is what decision it controls. And they determine the policy is essentially the need for guidance means resolution of appellate precedence. That is what the test now means. And that is what this court would have to follow in cases such as the application of public interest exception in cases such as Horstman, Robert F., and Charles K. should not have happened. Because this should have been followed. Because this started back even in 2002 or 2003. There's cases such as India B. and J.B. and in re-marriage of Peter Sparrow, all the way up to Hernandez in 2010. And in fact, even in Hernandez, they say, to determine if an authoritative determination of a question is needed, this court looks to whether the law is in disarray or if there is conflicting precedent, citing Alfred H.H., Peter Sparrow, J.B., India B., and in re-adoption of Walgreens. And that's the entire list of cases in which the Supreme Court has made plain that this is the rule to follow. If you ever have conflicting precedent in the appellate courts, if you're telling us it's moot and there's no exception that applies. Well, if it were moot in the appellate courts, then they would have to either find allowed consequences or have to find a capable of repetition yet evading review, such as in mental health cases, which is commonly applied there. And what you're saying is the public interest exception is something that the appellate courts cannot apply. Well, if there were, in fact, conflicting precedents to be resolved, it's questionable whether this court could issue an authoritative determination on a question because it would be resolving, for example, the first and second districts disagreed on a question. This court could take its own view, either agree with one or the other, or say something different. There is one unitary appellate court. This court's not bound by those decisions. But if the case were moot, then it's really questionable whether this court can authoritatively resolve a question upon which there is conflicting precedent among other appellate districts. I'm saying, how do you even get to conflicting precedent? In the Supreme Court of Illinois, when there is published... You're saying they'll only take it if they're going to resolve conflicting precedent in the appellate courts. But your argument to me means we will never issue anything precedential because we're not able to. When the case is moot, you're right, Your Honor. It does not appear that this court would have that ability, in such cases as Robert F., Charles K., and Horsman, to do what those courts did. If this court follows the clear guidance of the Supreme Court of Illinois in interpreting the proper scope, narrowly construed. This scope has to be narrowly construed. And that's why the Supreme Court does not want the appellate court issuing a stream of advisory opinions. And this case could be the one, if the state is able to take a PLA on this one, to try to get the Supreme Court of Illinois to emphatically say that, no, these type of first impression issues are not to be decided under the public interest exception to the mootness doctrine. And that is something the state would do if this court were to go down that road. So we should say that public interest exception applies, and then that gives the state a chance to take it up to the Supreme Court? No, Your Honor, I do not advocate that. But it would seem, though, that there may be a cause for a certificate of importance, for example, if this court were to rule that this case is a matter of importance that has to be resolved. So that could be another avenue instead of a PLA. How old is the – I see the Charles K. listed case in 2010. And I think Horst was in 2010. But how about Robert F.? Robert F. was – I had 2009. That's been around for a while. Maybe the Supreme Court just hasn't had occasion, however, to address the issue that you're arguing. Well, it's Hernandez, Henry Commitment to Hernandez, was the one in which they quite clearly said that the issue is a first impression. And the claim here that the defense makes is that Christopher K. was also an issue of first impression. That seemed to be Justice Freeman's position. But really what Justice Freeman is also saying is that the majority's decision was, in fact, that the law of the case issue was a matter of conflicting authority. And where is the conflicting authority on that? Well, actually, the appellate decision in Christopher K., which was not moved, was the conflicting authority. Because what they said in there is that the EJJ prosecution was barred by law of the case, even though it involved a different statutory subsection than was the previous determination. So they said, no, that's a novel application of the law of the case, which essentially means that the appellate opinion in Christopher K. created a disarray in the law. And the Supreme Court of Illinois can resolve that question, even though it became moot by the time they had a chance to hear it. So Christopher K. is not really a case of true first impression, despite what Justice Freeman says. The majority's decision controls. I'd like to just talk a little bit about the merits. And one of the main arguments, a prestigious oral argument by the defense, is relying on the section 5-7101B, which says, and the language that they're relying on says that only if the term of incarceration is permitted by law for adults found guilty of the offense for which the minor was adjudicated delinquent. And the defense says that means the status offense. They didn't use the same language as in the other subsections, 5-401 or 1-4.1, which said would not be illegal if committed by an adult. So if they could have said that in subsection 5-7101B, they didn't say would not be illegal if committed by an adult. They said only if the term of incarceration is permitted by law for adults found guilty. Well, then their argument is, well, adults cannot be found guilty of underage consumption of alcohol, but yet they don't make any showing that the general accountability statute has an exception for status offenses committed by juveniles. So if a parent were to provide alcohol to a child and that were illegal because it did not meet one of the exceptions in the Liquor Control Act, then could the state prosecute the parent by accountability if they had the intent that the minor were to unlawfully consume the alcohol? So if accountability applies, then yes, a minor can be found guilty of underage consumption of alcohol by accountability. So therefore, the idea that somehow this section 5-7101B means that there's an absolute bar of DJJ commitments for status offenders is not the case because the defense does not derive that from the actual language of the statute. It does not say status offense. And that's why there is no categorical ban on incarceration for status offenders. So for those reasons, the state requests this court to dismiss the appeal as moved. And I thank you for your time. Thank you. Rebuttal, please. The language that the state cites for mootness about whether the Supreme Court looks to whether there's a conflict or disarray in the law, that is certainly one ground for determining whether an authoritative determination is necessary under Prong 2 of the Public Policy Exception. But what the Supreme Court doesn't say is these are the only criteria. Prong 2 is only satisfied if there is a conflict or disarray in authority. And instead, what the Supreme Court has done, and this court has done, is repeated the language of the test repeatedly that Prong 2 is satisfied if an authoritative determination is desirable to guide public officials in the performance of their duties. And in this case, that prong is more than satisfied. In Champaign County, we have two of the three players in the courtroom, the state's attorney who has the authority to charge and ask for sentences, and the trial court that has the ability to impose sentences under the impression that they can commit kids to the Department of Juvenile Justice despite the language of the statute. The fact that this is going to occur again, the state is still steadfastly at this point, rather than saying, oops, we were wrong, we shouldn't have committed her to the Department of Juvenile Justice, continues to defend its right to send kids to the Department of Juvenile Justice. So authoritative determination is necessary to prevent the future harm. The three cases upon which the state relies, the Supreme Court cases, Walgreens, In re, J.B., and In re, Hernandez, I think what is significant about each of those cases is in none of those cases, when the Supreme Court refuses to reach the merits of those cases, under no circumstances is there any threat of future harm to anyone. In the case of the adoption of Walgreens, and that was a case where the case was found moot, the Supreme Court observed this is not going to be moot in future cases because these adoption cases drag on forever. By the time this inappellate court reaches it, the issue of adoption is still going to be pending. That adoption order is not going to be final in most cases. In Hernandez, the court observed that the state could wholly avoid the harm that it alleged, which was we don't know when to file notices of appeal. Should we file them before the defendant is ordered released, or should we file our notices of appeal after the final commitment order has been filed? And the Supreme Court said, file two notices of appeal, and then you don't have an issue. And then also in In re, J.B., which was a parental termination case, in that case, if the mother in that case had filed a stay to stop the termination proceedings when she filed her notice of appeal, she could have done that. She could have stopped it. So any future case like J.B., a parent in a termination case, can always file a document asking that the termination be stayed. In this case, there's no way to avoid this future harm because of the very, very short duration of what's happening in these cases. Because a child is going to be sent to the Department of Juvenile Justice, and because it's a misdemeanor charge, that child in most cases is going to be out of the department in three months, may have his parole terminated even shorter than that. So that when you look at the typical timeline for cases, even if the cases weren't handled by OSAD, even if we were able to comply with every single deadline for filing briefs and the filing of records, you're still going to miss that deadline for these kids. In both Robert F. and Charles K., this Court recognized when you have a vulnerable population, in the case of Robert and Charles, it was mentally ill people who were facing 90-day terms of commitment, and the review of those could never be had at the appellate level before that 90-day commitment has run. In the same way we have vulnerable children, who in all likelihood are going to be released from the Department of Juvenile Justice, but only after they've been held for at least 90 days, the issue is going to completely evade review. The Champaign County State's Attorney is asking this Court to authorize the continued unauthorized imprisonment of children, and it is putting future children at risk, the harm that is associated with commitments to the Department of Juvenile Justice, and it's putting federal delinquency dollars that go to the entire state in jeopardy by committing children, by committing status offenders without the authority to do so. So I respectfully request that this Court vacate the commitment order in this case. Thank you. Ladies, you both argued very persuasively and have given the Court a lot to think about. The case is submitted and the Court stands in recess until further call.